UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| ADRIAN DARCY SHAW, )<br>)<br>Petitioner, )<br>)<br>v. )<br>)<br>RICHARD ADAMS, )<br>)<br>Respondent. ) | Cause No. 4:21 CV 707 DDN |

**MEMORANDUM OPINION AND ORDER**

Before the Court is the petition of Missouri state prisoner Adrian Darcy Shaw for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.

The parties have consented to the exercise of plenary authority by the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons set forth below, the petition for a writ of habeas corpus is denied.

**BACKGROUND**

*Underlying conviction*

The following relevant facts are stated by the Missouri Court of Appeals in its Memorandum Supplementing Order affirming petitioner's conviction in the Circuit Court of the City of St. Louis.

Introduction

Adrian Darcy Shaw ("Defendant") was found guilty at jury trial of statutory sodomy. Defendant was sentenced to 16 years in the Missouri Department of Corrections ("DOC"). Prior to trial, the trial judge conducted a hearing ("491 hearing") required by § 491.0752 to decide if the State could use out-of-court statements made by the alleged victim ("J.B.") to her parents, grandmother ("Grandmother"), and a social worker, Karen Gudic. The trial court's decision to allow the use of the out-of-court statements to these four witnesses is Defendant's sole point on appeal. Defendant objected when J.B.'s mother ("Mother"), Grandmother, and Gudic testified to the out-

of-court statements at trial. However, Defendant did not object when J.B.'s father ("Father") testified to the out-of-court statements at trial.

At the end of the 491 hearing, the court made specific findings on the admissibility of the out-of-court statements. Because the evidence of the time, content, and circumstances of J.B.'s statements to Mother, Father, Grandmother, and Gudic presented at the 491 hearing provided a sufficient indicia of reliability, the trial court did not abuse its discretion in admitting these statements at trial under § 491.075. Therefore, we affirm the trial court's decision to allow these witnesses to testify at trial regarding J.B.'s statements.

Factual and Procedural Background

Defendant was set for trial on August 14, 2017. On August 11, the court held a 491 hearing to decide the admissibility of out-of-court statements made by J.B. to Mother, Father, Gudic, and Grandmother.

*The 491 Hearing*

The following was developed at the 491 hearing:
J.B., Defendant, and Mother all lived at Grandmother's house in June 2015. J.B had normally slept in Mother's bed. Mother had just bought a cot for J.B. to sleep in. According to Father, Defendant was not responsible for taking care of J.B. at home. Grandmother said J.B. felt Defendant was her best friend.

On June 2, Mother and J.B. went to Wal-Mart, and later J.B. played with her cousin. J.B. wore an orange/pink shirt with a bow and animal-print shorts throughout the day on June 2. Later that evening, Mother and Father went to the casino so Grandmother was babysitting J.B. and her infant brother. J.B.'s cot was set up in Grandmother's room at the foot of her bed.

J.B. was in the living room with Grandmother when Mother and Father left. That night, J.B. went to sleep in her cot. J.B. slept in the shirt and animal-print shorts she had worn throughout the day. According to Grandmother, J.B. woke up during the night and woke Grandmother saying something had scared her. Grandmother let J.B. sleep in bed with her. At this point, Defendant and J.B.'s brother were also in the bed.

Grandmother called Mother asking her to come home to take care of the children. Grandmother did not feel well. J.B. and J.B.'s brother were both upset so Grandmother wanted Mother and Father to come home. When Mother and Father arrived, everyone was asleep in Grandmother's bed

although Father suspected Defendant was pretending to be asleep. Father moved J.B. to Mother's room. Then Father moved J.B.'s brother to Mother's room, and everyone went to sleep.

On the morning of June 3, J.B. was woken up by her Mother. J.B. was still kind of asleep. While J.B. was scooting out of bed, Mother noticed J.B.'s animal-print shorts were ripped. Mother asked her how her shorts got ripped. J.B. was fiddling with her hands, just looking off. She did not answer. Again, mother asked her how the shorts got ripped. J.B. said her cousin ripped them.

Mother said her cousin could not have ripped them because Mother saw J.B and her shorts, undamaged, after coming home from playing with her cousin. Then Mother saw the other side of the shorts were also ripped. Mother asked again who ripped her shorts. She added, "If you don't tell me, I'm going to beat your ass." J.B. then said Defendant ripped them.

Mother inquired, "[Defendant] ripped them?" J.B. said yes and that she tried to tell Grandmother. Mother asked what Grandmother did, but J.B. said Grandmother was still asleep. Mother asked, "Did he touch you?" But J.B. did not answer. Then Mother asked, "did he touch your private?" To which J.B. said yes. Mother found Father and told J.B. to tell Father what had happened.

Father asked J.B. how her shorts got ripped. They had just bought them so he wanted to know how they were already ripped. J.B. was sitting on the bed. She was looking a little scared. At first, J.B. said her cousin, Father's nephew, ripped the shorts. Father said her cousin couldn't have because they would have noticed when J.B came home from playing with her cousin. Father asked again and told J.B. she'd be in trouble if she didn't tell them how she ripped the shorts. Father said, by "get in trouble", he meant he would whoop her ass. Father kept pressuring. J.B. said Defendant ripped them.

Then Father said Mother called Grandmother because they were worried Defendant had touched J.B. J.B. told Father that Defendant was "trying to do something" and "it had been a long time". Father said "J.B. don't lie on him. If you're lying, you're going to get your ass whooped. How did your shorts get ripped?" J.B. said Defendant ripped the shorts.

Mother called Grandmother to see if she was still with Defendant. Mother took J.B. into the hallway and asked her where her "private area" is. J.B. pointed to her vaginal area. J.B. told Mother she told Defendant to stop,

3

but he said to be quiet because she would wake her brother up which would make Grandmother mad.

On June 4, J.B. was taken to a social worker, Karen Gudic, at Cardinal Glennon Hospital for a medical cursory interview. Gudic explained a medical cursory interview is used to get enough information to determine if a doctor should see a child complaining of abuse or neglect and where on the body the doctor should check. She had been working in this position for around seven years at the time of her interview with J.B.

Gudic said J.B. was talkative but soft-spoken. In these types of interviews, the interviewer will build rapport and ask open-ended questions. In the conversation, Gudic asked why J.B. came to the hospital. J.B. said because Defendant touched her private parts. Gudic asked if she could point to her private parts. J.B. pointed to her vaginal area. Gudic asked what he touched her with. J.B. said his hand. Gudic asked if he touched her on her skin, clothing, or something else. Then, J.B. took her right hand and placed it inside her shorts by her vaginal area touching her skin.

A week or two after the incident and these initial disclosures, Grandmother spoke to J.B. while they watched cartoons. Grandmother and J.B. were sitting on Grandmother's bed, and J.B. did not seem aware of "what was going on or anything". Grandmother asked if Defendant touched her. J.B. said he did. Grandmother asked where he touched her. In response, J.B. put her hands between her legs.

Court Ruling on Admissibility

At the 491 hearing, the court made specific findings on the out-of-court statements the State could use at trial. The court allowed Mother to testify at trial about: J.B.'s silence when first asked who ripped the shorts; J.B. saying her cousin ripped them; J.B. saying Defendant ripped them; J.B. saying yes when asked if Defendant touched her private area; and J.B. pointing to her vaginal area when asked where her private are was (sic). Father could testify about J.B. saying: her cousin ripped the shorts; Defendant ripped the shorts; and Defendant tried to do "something". Grandmother could testify about J.B. saying yes when asked if the Defendant touched her and J.B. demonstrating where Defendant touched her by putting her hands between her legs. Gudic could testify to: J.B. saying Defendant touched her; J.B. pointing to her private area; and J.B. saying Defendant touched her with his hand.

> At trial, the State called ten witnesses including Mother, Father, Gudic, and Grandmother. The jury found Defendant guilty of statutory sodomy in the first degree under § 566.062.15 . Defendant was sentenced to 16 years in Missouri DOC.

(Doc. 18-3 at 2-6) (footnotes omitted).

### *Petitioner's direct appeal*

Petitioner directly appealed the judgment and sentence to the Missouri Court of Appeals. In his appeal, petitioner argued only that the trial court's decision to allow Ashley Brown, Angela Brown, Percy Brown, and Karen Gudic to testify as to the out-of-court statements of J.B. violated Missouri hearsay law. (Doc. 18-1 at 19.) Mo. Rev. Stat. § 491.075 allows otherwise inadmissible statements made by a child under the age of 14 to be admitted as substantive evidence of the truth of the matter asserted if they relate to a sexual offense performed by another and meet a set of factors. The trial court must hold a hearing outside the presence of the jury and decide if "time, content and circumstances of the statement provide sufficient indicia of reliability." § 491.075.1(1). At trial, petitioner objected to the statements made by Ashley Brown, Angela Brown, and Karen Gudic. He did not object to the statements made by Percy Brown. The Court of Appeals reviewed the statements that were objected to for abuse of discretion; it reviewed the statements that were not objected to under plain error. (Doc. 18-3 at 7.) On March 28, 2019, the Court of Appeals found no error or abuse of discretion as to any of the admitted statements. (*Id.* at 13.) Petitioner did not seek any further appellate review by the Missouri Supreme Court or United States Supreme Court.

### *Motion for post-conviction relief*

On November 13, 2017, petitioner filed a pro se motion for post-conviction relief under Missouri Supreme Court Rule 29.15 in the circuit court. This motion was prematurely filed because the Missouri Court of Appeals was still considering his direct appeal. The circuit court held the motion in abeyance until petitioner's appellate proceeding was concluded. *See* Missouri Supreme Court Rule 29.15(b) (2014); *McKay v. State*, 520

S.W.3d 782, 787 (Mo. 2017) (holding that a prematurely filed post-conviction motion should be held in abeyance). The court appointed counsel for petitioner who, after being granted an extension of time, filed a motion for post-conviction relief on September 5, 2019.

In his motion, petitioner asserted two grounds for relief: First, his trial counsel rendered ineffective assistance of counsel for failing to object to the prosecutor using leading questions with witness Douglas Torrens. Second, his trial counsel rendered ineffective assistance because she advised him not to testify at the trial. An evidentiary hearing was held, and petitioner's trial counsel testified. On January 17, 2020, the motion court denied petitioner's motion for post-conviction relief. (Doc. 18-5.)

Petitioner appealed the circuit court's denial of post-conviction relief to the Missouri Court of Appeals. The only ground for appeal was that his trial counsel was ineffective for failing to object to the prosecutor asking leading questions of Douglas Torrens. The Court of Appeals affirmed (Doc. 18-7) and issued its mandate on May 13, 2021.

### *Timeliness of federal habeas petition*

Petitioner commenced this federal habeas corpus action on June 16, 2021.

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) created a one-year period for filing a petition for a writ of habeas corpus in the federal courts. 28 U.S.C. § 2244(d)(1). The limitations period begins to run at the end of direct appellate review — once the judgment of the state trial court is final or the time to seek direct review has expired. *Gonzales v. Thaler*, 565 U.S. 134, 150 (2012). Petitioner's direct review ended April 12, 2019, after the fifteen-day deadline to appeal the appellate court's decision to the Missouri Supreme Court passed. Mo. Sup. Ct. R. 84.17. The AEDPA's limitations period is tolled while a "properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending". 28 U.S.C. § 2244(d)(2). The limitations period was tolled until May 14, 2021, the day after the Missouri Court of Appeals denied petitioner's post-conviction relief appeal. The pending federal petition was timely filed.

6

## PETITIONER'S GROUNDS FOR FEDERAL HABEAS RELIEF

Pro se habeas petitions should be liberally construed. *Archuleta v. Hedrick*, 365 F.3d 644, 648 (8th Cir. 2004). Petitioner Shaw alleges the following grounds for federal habeas relief:

(1)     he was falsely arrested (Doc. 1 at 4);

(2)     his trial counsel rendered ineffective assistance in several respects (Doc. 1-1 at 44);

(3)     the trial court's jury instructions were faulty (Docs. 1-1 at 57; 13);

(4)     the testimony against him was perjured (Doc. 1-1 at 9);

(5)     there was insufficient evidence to support his conviction (Docs. 1-1 at 1, 9, 12, 11 at 7);

(6)     inadmissible hearsay evidence was admitted against him (Doc. 11 at 1);

(7)     the refiling of the case against him violated double jeopardy (Doc. 11 at 4);

(8)     there was an error in his sentencing, (Doc. 12); and

(9)     he suffered from vindictive prosecution (Doc. 17 at 3-4).

## EXHAUSTION AND PROCEDURAL BAR

28 U.S.C. § 2254 requires that a federal habeas corpus petitioner exhaust his state law remedies before he seeks relief in federal court. A prisoner has not exhausted his state law remedies if he "has the right under the law of the State to raise, by any available procedure, the question presented." 28 U.S.C. § 2254(c). In Missouri, an appeal to the intermediate state appellate court exhausts state remedies, thus permitting federal habeas review. *See* Mo. Sup. Ct. R. 83.04; *Randolph v. Kemna*, 276 F.3d 401, 404 (8th Cir. 2002) ("Rule 83.04 … makes clear that Missouri does not consider a petitioner who bypasses its supreme court in favor of federal habeas review to have denied the State its rightful opportunity to resolve federal constitutional claims.").

To preserve an issue for federal habeas review, a state prisoner must fairly present his claims to the state courts during the trial court or post-conviction proceedings and on

7

appeal. *Sweet v. Delo*, 125 F.3d 1144, 1149 (8th Cir. 1997). Failure to raise a denied claim in a post-conviction appeal in state court is an abandonment of the claim that bars federal habeas review. *Id*. at 1150; *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). Petitioner's post-conviction motion raised two claims: first, his trial counsel rendered ineffective assistance for failing to object to the prosecutor asking leading questions of witness Douglas Torrens, and second, trial counsel rendered ineffective assistance because she advised him not to testify at the trial. After the post-conviction motion court denied these claims, petitioner preserved only the first for federal habeas review of those claims by raising only it in his appeal from the denial of post-conviction relief. Thus, the only claim that is not procedurally barred is the claim that his trial counsel rendered ineffective assistance for failing to object to the prosecutor asking leading questions.

Petitioner may overcome the procedural bar to the other ground if he can demonstrate a legally sufficient cause for the default and actual prejudice resulting from it, or if the failure to review the claim would result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 749-750. *See also Murray v. Carrier,* 477 U.S. 478, 485, 495 (1986). Generally, to establish sufficient cause for a procedural default, petitioner must "show that some objective factor external to the defense impeded [his] efforts to comply with the State's procedural rule." *Coleman*, 501 U.S. at 753. To establish actual prejudice, petitioner "must show that the errors of which he complains worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Ivy v. Caspari*, 173 F.3d 1136, 1141 (8th Cir. 1999). Petitioner does not make any attempt to overcome the procedural default. He does not claim any external factor prevented him from bringing any of his other claims to the state courts, and there is no evidence in the record of such a factor.

The fundamental miscarriage of justice exception allows for review when petitioner makes a showing that new evidence indicates "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Brownlow v. Groose*, 66 F.3d 997, 999 (8th Cir. 1995) (quoting *Schlup v. Delo,* 513 U.S. 298, 322 (1995)). "'[A]ctual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United*

8

*States*, 523 U.S. 614, 623 (1998). Petitioner must show "it is more likely than not that no reasonable juror would have found [him] guilty beyond a reasonable doubt." *Schlup*, 513 U.S. at 327. Petitioner asserts that he is actually innocent of the charges and that new evidence exists, including evidence of perjury and a recantation of Douglas Torrens testimony. However, he presents no specific evidence to that effect. Thus, his argument for a fundamental miscarriage of justice is not supported.

Petitioner has presented no legally sufficient cause for his procedural default or a substantial basis for his allegation that he would suffer a fundamental miscarriage of justice. Only petitioner's claim for ineffective assistance of counsel is properly before this court for consideration.

## **STANDARD OF REVIEW**

Under the AEDPA, a federal court may only grant habeas relief on a claim that has been decided on the merits by a state court when that adjudication:

(1) Resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) Resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2).

A state court's decision is contrary to clearly established federal law if it "arrives at a conclusion opposite to that reached by [the United States Supreme] Court on a question of law or … decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Thaler v. Haynes,* 559 U.S. 43, 47 (2010). A state court's decision involves an "unreasonable application" of clearly established federal law if "the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*. This standard is difficult to meet because habeas corpus "is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). A state-court decision is not unreasonable

if "'fairminded jurists could disagree' on [its] correctness." *Id*. at 101 (quoting *Yarborough v. Alvarado,* 541 U.S. 652, 664 (2004)). "Even a strong case for relief does not make the state court's contrary conclusion unreasonable." *Harrington*, 562 U.S. at 102.

Determination of factual issues made by a state court "shall be presumed correct," and the applicant "shall have the burden of rebutting the presumption by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

## DISCUSSION

### *Ineffective Assistance of Counsel—Ground 2*

Petitioner alleges that his trial counsel rendered constitutionally ineffective assistance when she failed to object to the prosecutor asking leading questions of witness Douglas Torrens about non-redacted portions of his letter to the prosecutor. Petitioner raised this claim to the Missouri courts who found it without merit. Under AEDPA, the Court analyzes whether the Missouri courts acted contrary to clearly established federal law or applied it in an unreasonable manner.

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court found that the right to effective assistance of counsel arises from the Sixth and Fourteenth Amendments. The right to counsel is "the right to effective assistance of counsel." *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970). Under *Strickland*, a petitioner is entitled to federal habeas corpus relief upon a showing that "counsel's conduct so undermined the proper function of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686. To prevail on a *Strickland* claim, petitioner must pass a two-part test. First, petitioner must show that counsel's representation "fell below an objective standard of reasonableness." *Id*. at 688. Second, petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. To avoid a hindsight bias, where every unsuccessful trial strategy seems suspect in the light of the result, the Court must give a strong presumption that counsel's conduct "falls within the wide range of reasonable professional assistance" placing the burden on the petitioner

10

to overcome the presumption that counsel's actions were reasonable trial strategy. *Id.* at 689.

Analyzing the claim, the Missouri Court of Appeals wrote:

> In this case, the decision not to object to the prosecutor's use of leading questions does not constitute deficient performance given Counsel's trial strategy underlying the decision. See *Michael [v. State of Missouri]*, 348 S.W.3d 164, 168 (Mo. Ct. App. 2011)] (similarly finding with respect to a decision not to object to particular testimony). Trial Counsel testified in her deposition she did not object to the procedure of the prosecutor asking leading questions because she thought it "honestly would be the safest route, so that [Torrens] wouldn't say anything that was irrelevant and not related to the actual charges [ ] in this case." We find this was a reasonable trial strategy.

(Doc. 18-7 at 6-7.)

Petitioner's counsel made a reasonable strategic choice that Torrens being led by the prosecutor would be safer than him potentially speaking about unrelated issues to the jury. This shows consideration of the potential options and reflects the logic behind the choice to not object. "Strategic choices made after thorough investigation of the law and facts relevant to plausible options are virtually unchallengeable." *Strickland*, 466 U.S. at 690. Thus, the Missouri courts' application of federal law was reasonable and petitioner's claim of ineffective assistance of counsel is without merit.

## **Procedurally Barred Claims**
### *False Arrest—Ground 1*

Petitioner asks for habeas relief on the grounds that he was falsely arrested. He claims that a detective came to his job and told his boss he was only going in for questioning. (Doc. 1 at 4.) A false arrest claim is rooted in the Fourth Amendment prohibition against unreasonable search and seizure. *Marksmeier v. Davie*, 622 F.3d 896, 900 (8th Cir. 2010).

If a state provides full and fair litigation of a Fourth Amendment claim, a state prisoner cannot obtain federal habeas relief. *Stone v. Powell*, 428 U.S. 465, 494 (1976). A

Fourth Amendment search and seizure claim is only reviewable by a federal habeas court if "either the state provided no procedure by which the prisoner could raise his Fourth Amendment claim, or the prisoner was foreclosed from using that procedure because of an unconscionable breakdown in the system." *Willett v. Lockhart*, 37 F.3d 1265, 1273 (8th Cir. 1994).

The record shows that Missouri provided adequate procedures for petitioner's other Fourth Amendment claims and that petitioner took advantage of those procedures during his trial. Petitioner was able to suppress statements he had made during a polygraph exam. (Doc. 18-9 at 203.) Even though petitioner did not bring this particular false arrest Fourth Amendment claim, it is clear the state provided a procedure for the petitioner to raise Fourth Amendment claims and petitioner was not foreclosed from bringing those claims as evidenced by his other successful Fourth Amendment claims. According to *Willet*, because the procedure was available and petitioner was not foreclosed from using it, his false arrest claim is not cognizable for review by this court.

### *Instructional Error—Ground 3*

Petitioner claims that the instructions given to the jury were faulty. Petitioner alleges that the instructions given to the jury did not align with the Missouri Approved Instructions. (Doc. 1-1 at 57.) In non-capital cases, instructions containing state law errors are not grounds to obtain federal habeas relief. *Gilmore v. Taylor*, 508 U.S. 333, 342 (1993); *Estelle v. McGuire*, 502 U.S. 62 (1991). Federal habeas courts do not have the authority to provide relief for state law errors, or the province to reexamine state law determinations by state courts. *Evenstad v. Carlson*, 470 F.3d 777, 782-83 (8th Cir. 2006). As such, the claim for relief based on faulty jury instructions cannot be heard by this court.

### *Perjured testimony—Ground 4*

In another letter to the court after his initial petition, petitioner claims that he was convicted on testimony that the prosecution knew to be perjured. *See* Doc. 1-1 at 9. When a prosecutor fails to correct false testimony that the prosecutor knows is false, it violates

12

the defendant's due process rights and is grounds for overturning a conviction. *Napue v. People of State of Ill.,* 360 U.S. 264, 269 (1959). Similarly, a prosecutor not disclosing a promise to not prosecute a witness deceives the court and jurors when contrary testimony is given by the witness. *Giglio v. United States*, 405 U.S. 150, 153 (1972).

In order to obtain relief, petitioner is required to show that perjured testimony was used, that the prosecution knew or should have known that the testimony was perjury, and that there is a reasonable likelihood that the perjured testimony could have affected the jury verdict. *United States v. Bass*, 478 F.3d 948, 951 (8th Cir. 2007). Even liberally construing petitioner's allegations, petitioner presents the court with no particularized set of facts to support the allegation of perjured testimony. Without sufficient facts to support his claim, petitioner's allegations of perjured testimony are baseless. This ground is without merit.

### *Insufficient evidence—Grounds 5 and 6*

In his letters to the court after his initial petition, petitioner asserts that evidence was not sufficient to support his conviction. Construing these letters liberally as attempts to amend his petition as a pro se litigant, the Court considers this argument as an additional ground for relief. *Archuleta v. Hedrick*, 365 F.3d 644, 648 (8th Cir. 2004) (stating pro se petitions should be construed liberally).

In general, a reviewing court may only set aside a jury's verdict for insufficient evidence if no rational trier of fact could agree with the jury. *Cavazos v. Smith*, 565 U.S. 1, 2 (2011). In the particular context of federal habeas review, the federal court may only overturn the state court if the decision was objectively unreasonable. *Id* at 2. The court views sufficiency of evidence claims in the light most favorable to the State and in the light of applicable state law. *Jackson v. Virginia*, 443 U.S. 307, 319, 324 (1979). Based on the evidence on the record, summarized above by the Missouri Court of Appeals, there is sufficient evidence for a trier of fact to find that petitioner was guilty of statutory sodomy under Mo. Rev. Stat. § 566.062.1. The statute defines first degree sodomy as "deviate sexual intercourse with another person who is less than fourteen years old." *Id.* Deviate sexual intercourse is defined as "any act involving the genitals of one person and the hand

13

… of another person or any sexual act involving the penetration, however slight of the male or female sex organ or the anus by a finger . . . for the purpose of arousing or gratifying the sexual desire of another person…" Mo. Rev. Stat. § 566.010(1) (2015). The evidence presented at trial could allow a rational trier of fact to sufficiently find the essential elements of the statutory sodomy crime beyond a reasonable doubt. As a rational trier of fact could come to the same verdict as petitioner's jury, his claim of insufficient evidence is without merit.

### *Double Jeopardy—Ground 7*

Petitioner claims in very general terms that his rights under the Double Jeopardy Clause of the Fifth Amendment were violated, because he was tried and convicted on a charge that had been dismissed by *nolle prosequi* by the state. (Doc. 11 at 4.) Such is not what happened factually. Petitioner was initially charged in two counts: statutory sodomy in violation of Mo. Rev. Stat. § 566.062, and child molestation in violation of § 566.067. (Doc. 18-10 at 2.) He was indicted on April 6, 2017. Petitioner remained charged with both counts in the alternative until the jury found petitioner guilty of the statutory sodomy. Then the state dismissed by *nolle prosequi* the charge of child molestation. (Docs. 18-9 at 471, 508; 18-10 at 2.)

The Double Jeopardy Clause protects people from being tried more than once for the same offense. *Currier v. Virginia*, 138 S. Ct. 2144, 2149 (2018). Once jeopardy has attached a defendant cannot be retried for the same charge. *Crist v. Bretz*, 437 U.S. 28, 35 (1978). Jeopardy attaches when the jury is empaneled and sworn. *Martinez v. Illinois*, 572 U.S. 833, 839 (2014). The record does not indicate that defendant was tried and convicted on a previously dismissed charge. Thus, petitioner's rights under the Double Jeopardy Clause were not violated. This ground is without merit.

### *Sentencing Errors—Ground 8*

Petitioner asserts that his Sixth Amendment rights were violated when he was sentenced to a term greater than what was recommended by the jury. *Lafler v. Cooper*, 566 U.S. 156, 165 (2012) (stating any amount of jail time has Sixth Amendment significance).

14

Petitioner's assertion is contradicted by the record. Before trial, on August 11, 2017, the circuit judge found that petitioner was a prior and persistent offender under Mo. Rev. Stat. § 558.016.3 as he had admitted to two or more prior felonies committed at different times. (Doc. 18-10 at 12.) When a court finds that a defendant is a prior persistent offender, the court, not the jury, pronounces sentence. Mo. Rev. Stat. § 558.016. This ground for relief is without merit.

### *Vindictive Prosecution---Ground 9*

Petitioner asserts that he suffered from vindictive prosecution. Vindictive prosecution occurs when a prosecutor seeks to punish a defendant solely for exercising a valid legal right. *United States v. Williams*, 793 F.3d 957, 963 (8th Cir. 2015). It is the petitioner's burden to demonstrate that prosecution was brought to punish him for exercising a legal right. *Id*. Petitioners have two routes to establish prosecutorial vindictiveness.  First, they can show "objective evidence of the prosecutor's vindictive or improper motive in increasing the number or severity of charges." *United States v. Chappell*, 779 F.3d 872, 879 (8th Cir. 2015). If they cannot establish vindictiveness following the first route, in rare instances, a petitioner may "rely upon a presumption of vindictiveness, if he provides sufficient evidence to show a reasonable likelihood of vindictiveness exists" *Id*. Prosecutors have broad discretion in performing their duties, so "the defendant's burden to show vindictive prosecution is 'a heavy one'" *Williams*, 793 F.3d at 963 (quoting *United States v. Leathers*, 354 F.3d 955, 961 (8th Cir.2004)).

Petitioner alleges that vindictiveness "accrued throughout [the] trial" and points to a section of the trial transcript documenting questions by the jury during deliberations. (Doc. 17.). It is unclear how these trial transcript pages relate to petitioner's accusations of vindictiveness. The charges against petitioner were never increased in number or severity at any point during the criminal proceedings against him. There is no evidence of prosecutorial vindictiveness or a reasonable likelihood of vindictiveness. The claim of prosecutorial vindictiveness is without merit.

## CONCLUSION

For the reasons set forth above,

**IT IS HEREBY ORDERED** that the petition of Adrian Darcy Shaw for a writ of habeas corpus under 28 U.S.C. § 2254 **[Doc. 1] is denied.** This action is dismissed with prejudice.

**IT IS FURTHER ORDERED** that all pending motions of petitioner **are denied as moot.**

Petitioner having made no substantial showing that that he was deprived of a constitutional right,

**IT IS FURTHER ORDERED** that a certificate of appealability is denied.  28 U.S.C § 2253(c)(2).

An appropriate Judgment Order is issued herewith.

>   /s/   David D. Noce  
> **UNITED STATES MAGISTRATE JUDGE**

Signed on February 15, 2023.